UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

**CESAR LUCIEN,** on behalf of himself and
all others similarly situated,

                Plaintiff,

      v.

 **FURNICHE LLC,**

              Defendant.
-----------------------------------------------------------------

Case No. 1:25-cv-7142

**CLASS ACTION COMPLAINT
& DEMAND FOR JURY
TRIAL**

Plaintiff, Cesar Lucien ("Plaintiff" or "Mr. Lucien"), on behalf of himself and all others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, JOSEPH & NORINSBERG, LLC, as and for their class action complaint upon Defendant, FURNICHE LLC ("Furniche," or "Defendant"), hereby alleges as follows:

## INTRODUCTION

1.     Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content while using the computer. (**Ex. A** – CESAR LUCIEN, Legally Blind Diagnosis, dated 4/25/2025).[1] Plaintiff uses the terms "blind" or "visually-impaired," as Plaintiff's central visual acuity with correction is less than or equal to 20/200.

2.     Defendant is a Florida-based limited liability company with its principal office located at 1101 Brickell Ave, Suite 800, Miami, Florida 33131. Defendant owns and operates the website https://www.furniche.com (the "Website" or "Defendant's Website"), which offers

---

[1] **See, Ex. A,** NYS Commission for the Blind & Visually Handicapped, dated April 25, 2025.

consumers access to online furniture sales, interior design services, and home décor products nationwide, including in New York.

3.    Plaintiff brings this civil action against Defendant for its failure to design, construct, maintain, and operate the Defendant's Website, https://www.furniche.com,  to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired individuals. Defendant's denial of full and equal access to the Website—and therefore its denial of the goods and services offered thereby—constitutes a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

4.    Based on a 2020 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired,[2] including 2.0 million who are blind. According to a 2016 report published by the National Federation of the Blind, approximately 418,500 visually impaired persons live in the State of New York.[3]

5.    Congress provides a clear and national mandate for the elimination of discrimination against individuals with disabilities. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Similarly, both New York State and New York City law requires places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

---

[2] *See* United States Census Bureau Report.

[3] *See* 2016 National Federation for the Blind Report.

6.      Furniche.com, Defendant's official e-commerce platform, has been online since at least 2015. For over a decade, Defendant has operated this digital property in the public marketplace, offering furniture and home décor products to consumers nationwide. Throughout this time, the Department of Justice has consistently affirmed that Title III of the ADA applies to public-facing websites, and that conformance with the Web Content Accessibility Guidelines (WCAG) constitutes a reasonable benchmark for compliance. Defendant's failure to implement WCAG-compliant features—despite clear federal guidance and ample opportunity—reflects a sustained disregard for the rights of individuals with disabilities.

7.      Defendant's Website is not equally accessible to blind and visually impaired consumers; therefore, Defendant is in violation of the ADA. Plaintiff now seeks a permanent injunction to cause a change in the Defendant's corporate policies, practices, and procedures so that Defendant's Website will become and remain accessible to blind and visually-impaired consumers.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, as Plaintiff alleges violations of Title III of the Americans with Disabilities Act ("ADA"), a federal civil rights statute. Supplemental jurisdiction over Plaintiff's state and city law claims is proper under 28 U.S.C. § 1367.

9.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the New York State Human Rights Law, Article 15 (Executive Law § 290 *et seq.*) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, ("NYCHRL") & § 296 *et seq.*; and the New York State Civil Rights Law, Article 4, § 40-c and §

3

40-d ("NYCRL").

10.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant conducts substantial and continuous business within this District through its website. A significant portion of the conduct giving rise to this action occurred within the Southern District of New York ("SDNY"), as Plaintiff attempted to access the subject website from his residence in New York County—within the jurisdiction of this Court—on multiple occasions.

11.    Jurisdiction and venue are proper in this District, where Plaintiff resides and where courts have consistently held that website accessibility barriers encountered by in-district users support personal jurisdiction over "out-of-state operators." [4]

## THE PARTIES

12.    Plaintiff, CESAR LUCIEN, is and was at all relevant times a resident of the City and State of New York.

13.    Plaintiff is legally blind and visually impaired and qualifies as an individual with a disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the New York City Human Rights Law ("NYCHRL"). Plaintiff cannot access digital content without the assistance of screen-reading software, including Nonvisual Desktop Access ("NVDA").

14.    Upon information and belief, Defendant FURNICHE LLC is a Florida limited

---

[4] *See, e.g. Chloe NA v. Queen Bee of Beverly Hills, LLC.,* 616 F.3d 158 (2d Cir. 2010*); Reed v. 1-800-Flowers.com, Inc.*, 327 F.Supp.3d 539 (E.D.N.Y. 2018) (exercising personal jurisdiction over forum plaintiff's website accessibility claims against out-of-forum website operator); *Andrews v. Blick Art Materials*, LLC, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *see also Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S.Ct. 1017 (2021) (personal jurisdiction can be found as long as the company conducted business in the consumer's home state that relates in some way to the consumer's injuries, such as engaging in other transactions for similar products).

liability company with its principal office located at 1101 Brickell Avenue, Suite 800, Miami, Florida 33131. Defendant owns and operates the website https://www.furniche.com, which offers a wide range of furniture, home décor, and interior design services to consumers nationwide, including in New York.

15.    Furniche.com serves as Defendant's primary e-commerce platform, offering curated collections of modern and luxury furniture, virtual design consultations, and promotional sales accessible to the general public. The Website features interactive product galleries, embedded video content, and dynamic shopping tools that are inaccessible to blind users without proper alt-text, semantic structure, and ARIA labeling.

16.    Defendant's Website and the services offered thereon constitute a "place of public accommodation" under Title III of the ADA, 42 U.S.C. § 12181(7)(E) and (F), as it is a sales establishment and service provider operating in the digital marketplace. See Andrews v. Blick Art Materials, LLC, 268 F. Supp. 3d 381 (E.D.N.Y. 2017); Romero v. 88 Acres Foods, Inc., 580 F. Supp. 3d 9 (S.D.N.Y. 2022).

17.    Defendant's website and the services offered thereon constitute a "place of public accommodation" under Title III of the ADA, 42 U.S.C. § 12181(7)(J). See *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 381 (E.D.N.Y. 2017); *Romero v. 88 Acres Foods, Inc.*, 580 F. Supp. 3d 9 (S.D.N.Y. 2022).

## NATURE OF ACTION

18.    This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant Furniche' operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of

this District, attempted to access Defendant's website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

19.    The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind, and visually-impaired persons alike.

20.    In today's tech-savvy world, blind and visually impaired people have the ability to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may use to independently access the Internet. Unless websites are designed to be read by screen reading software, blind, and visually-impaired persons are unable to fully access websites, and the information, products, goods and contained thereon.

21.    Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screens-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately, such as the popular screen-reading software program for a Windows computer, Nonvisual Desktop Access "NVDA."

22.    Plaintiff,  CESAR LUCIEN, is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., and NYCHRL. For Plaintiff to access the Internet, he must utilize a computer which contains a screen-reader, such as "NVDA for Windows."

23.    Screen reader "software translates the visual Internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art Materials, LLC,* 286 F.Supp.3d 365, 375 (E.D.N.Y. 2017) As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be "clicked," which will bring her to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand.
>
> The screen reading software uses auditory—rather than visual—cues to relay this same information. When a sight impaired individual reaches a link that may be "clicked on," the software reads the link to the user, and after reading the text of the link says the word "clickable."…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."

*Id.* at 373. *see also* American Federation for the Blind, Screen Readers, https://www.afb.org/blindness-and-low-vision/using-technology ("Computer Access for People Who Are Blind or Have Low Vision," & "Using Technology") (Last accessed on August 12, 2025; estimating 26.0 million adult American reported sight deficiency).

24.    Plaintiff attempted to access Defendant's website on multiple occasions from his home in Bronx County, New York in August, 2025, seeking to register an account, browse

furniture collections, schedule a virtual design consultation, and access customer support. Some of the unique features offered by Defendant and desirable to Plaintiff include:

- Interactive product galleries with embedded videos and rotating image carousels;
- Virtual interior design consultations and room layout tools;
- Promotional sales and limited-time offers targeted to New York consumers;
- Customer support chat and service request forms.

25.    However, due to Defendant's failure to implement accessible design features, Plaintiff was unable to meaningfully engage with these services.

**Unique Features of Furniche.com**

26.    Defendant Furniche LLC is a national online furniture and interior design platform operated from its principal office in Miami, Florida. It conducts substantial business in this District by marketing its products and services to New York residents, accepting orders from New York-based users, and maintaining a website accessible within the District.

27.    **Interactive Product Galleries & Multimedia Content** Furniche.com features dynamic product galleries with rotating image carousels, embedded promotional videos, and interactive room previews. These multimedia elements are central to the shopping experience but remain inaccessible to blind users due to missing alt-text, unlabeled buttons, and lack of ARIA roles—preventing screen readers from conveying visual information effectively.

28.    **Virtual Design Consultations & Room Planning Tools** Defendant offers virtual interior design services, including live consultations and drag-and-drop room layout tools. These features rely on complex visual interfaces and mouse-dependent interactions, which are not operable via keyboard navigation and lack screen reader compatibility—excluding blind users from personalized design services.

8

29.     **Mobile Optimization & App Functionality** The Furniche mobile app, available for iOS and Android, is marketed as a seamless tool for browsing collections, managing orders, and accessing design support. However, accessibility audits have revealed that key mobile features—such as form fields, navigation menus, and interactive widgets—lack proper labeling and structure, rendering them unusable by screen reader users.

30.     **Exclusive Loyalty Program & Promotional Offers** Through its Furniche Rewards program, Defendant offers points for purchases, early access to sales, and VIP design perks. This loyalty system is a core part of the user experience, yet blind users are denied equal participation due to inaccessible registration forms, unlabeled account settings, and non-compliant promotional banners.

31.     Despite using industry-standard screen-reading software, Plaintiff was unable to complete these tasks due to persistent accessibility barriers. Defendant's failure to implement WCAG-compliant features across its core services has denied Plaintiff equal access to the Website's offerings, in violation of federal, state, and city disability laws.

32.     Defendant's website constitutes a place of public accommodation under 42 U.S.C. § 12181(7), as it offers goods and services to the general public and is integrated with Defendant's commercial operations.

**<u>Legal Violations and Impact on Plaintiff</u>**

33.     Defendant's failure to design, maintain, and update its website in accordance with the Web Content Accessibility Guidelines ("WCAG") 2.1 Level AA constitutes a denial of full and equal access under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182 et seq.

34.     The persistent accessibility barriers described herein—including unlabeled form

fields, missing alternative text, broken ARIA references, and low contrast errors—violate the ADA's mandate that places of public accommodation provide effective communication and equal access to individuals with disabilities.

35.     Defendant's omissions are not isolated or technical oversights; they reflect a systemic disregard for digital accessibility obligations. Upon information and belief, Defendant has failed to adopt a written accessibility policy, designate an accessibility coordinator, or conduct regular usability testing with disabled users.

36.     As a result of these failures, Plaintiff was denied meaningful access to Defendant's core services, including browsing race information, placing wagers, managing account settings, and participating in promotional programs. These denials caused frustration, humiliation, and a sense of exclusion—harms recognized under federal disability law.

37.     Defendant's conduct also violates the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(4), which independently prohibit discrimination in public accommodations and require affirmative steps to ensure accessibility.

38.     Plaintiff seeks declaratory and injunctive relief requiring Defendant to remediate its website in accordance with WCAG 2.1 Level AA standards, implement a robust accessibility policy, and engage blind users in usability testing. Plaintiff also seeks compensatory damages, attorneys' fees, and costs under applicable federal, state, and city law.

39.     Upon information and belief, Defendant has failed to implement a meaningful accessibility policy, conduct regular audits, or engage disabled users in usability testing. The barriers encountered by Plaintiff are systemic and ongoing.

**Plaintiff's Attempt to Access Furniche.com and Resulting Barriers**

40.     On multiple occasions, including August 4, 2025, and August 5, 2025, Plaintiff attempted to access Defendant's website, www.furniche.com, using the NVDA screen-reading software. Plaintiff sought to browse and purchase furniture, explore design services, and participate in promotional programs advertised to consumers in New York.

41.     Plaintiff was specifically interested in the following products and services:

- **Bedroom Furniture Collections**, including upholstered beds and modular storage units featured in the "Jonathan Louis Fine Furniture" gallery
- **Mattress Shopping Tools and Articles**, such as "Buying a New Mattress" and "Mattress Shopping Tips," which were promoted as educational resources for selecting sleep products;
- **Virtual Design Consultations**, including interactive room planners and layout tools referenced in articles like "Help My Dining Furniture Space" and "Plan & Shop for Home Furnishings";
- **Labor Day and Back-to-School Promotions**, including limited-time sales on bedroom sets, recliners, and accent pieces;
- **Eco-Friendly and American-Made Furniture**, including articles such as "Furniture Made in the USA Matters" and "What Makes It Sustainable Furniture."

42.     Despite repeated attempts, Plaintiff was unable to meaningfully engage with these offerings due to pervasive accessibility barriers documented in the attached audits:

43.     On August 18, 2025, Plaintiff's counsel commissioned a comprehensive accessibility audit of www.furniche.com, the findings of which are appended to this Complaint. The SortSite Accessibility Validation Report (**Ex. B**) identified over fifteen (15) Level A violations across more than 20,000 pages, including but not limited to:

- Images with alt text consisting only of file names or placeholders (e.g., "furniche's picture"), which screen readers voiced as meaningless or unlabeled;

11

- o   Form controls lacking accessible names, rendering checkout and account creation forms unusable;
- o   Links labeled only as "Click Here" or "Learn More," without descriptive context or ARIA attributes, obstructing navigation and comprehension.

44.     The **WAVE scan (Ex. C) of the "Learn" and "Plan & Shop" pages** revealed:

- o   22 critical errors, including 22 linked images missing alternative text;
- o   Empty links and missing form labels in high-traffic areas such as the homepage and product galleries;
- o   Very low contrast in promotional banners and navigation elements, impeding readability for low-vision users.

45.     The **SortSite Broken Link Report (Ex. D)** documented over 50 broken internal and external links, including:

- o   Dead links to product articles such as "How to Shop Bedroom Furniture," "Power Lift Recliners," and "Dining Room Furniture Shopping Guide";
- o   Inaccessible planning tools like "Deluxe Home Quick Planner" and "Furniture Space Planners," which returned 404 errors;
- o   Broken social media integrations and gallery links, preventing Plaintiff from accessing visual previews and community content.

46.     These barriers materially interfered with Plaintiff's ability to browse products, understand specifications, complete purchases, and access design services. Each barrier— individually and in aggregate—denied Plaintiff equal access to Defendant's goods and services, resulting in frustration, exclusion, and deterrence from future engagement.

47.     Defendant's failure to implement WCAG 2.1 Level AA-compliant features— despite clear federal guidance and the availability of accessible design tools—constitutes ongoing discrimination under the ADA, NYSHRL, and NYCHRL.

**Plaintiff's Intent to Return Upon Remediation**

48.    Plaintiff Cesar Lucien has a genuine, ongoing interest in returning to www.furniche.com once the website is made accessible. His intent is not speculative—it is rooted in his personal needs, consumer preferences, and the unique offerings of Defendant's platform that remain unavailable to him due to current accessibility barriers.

49.    Plaintiff resides in a small apartment in New York County and is actively seeking to furnish his living space with functional, stylish, and space-efficient pieces. www.furniche.com offers curated collections tailored to urban living, including modular bedroom sets, compact dining furniture, and multi-use storage solutions—products that align with Plaintiff's needs and aesthetic preferences.

50.    In addition to product selection, Plaintiff is particularly drawn to Furniche's virtual design consultation services. These services promise personalized room planning, layout optimization, and style matching—all of which are invaluable to blind users who cannot rely on visual cues when arranging furniture or selecting complementary pieces. Plaintiff has expressed a desire to engage with these services to ensure his home is both functional and welcoming.

51.    Plaintiff also wishes to participate in Furniche's promotional programs and loyalty rewards, including seasonal sales and the Furniche Rewards system. These programs offer discounts, early access to new collections, and exclusive design perks—benefits that Plaintiff has been excluded from due to inaccessible registration forms and account interfaces.

52.    Plaintiff's intent to return is further supported by his repeated attempts to access the site, his interest in specific products and services, and his reliance on screen-reading software

to navigate digital marketplaces. Furniche.com is not merely one of many options—it is a targeted destination for Plaintiff's furnishing and design needs.

53.    Once the website is remediated to conform with WCAG 2.1 Level AA standards and becomes independently usable by blind individuals, Plaintiff fully intends to revisit Furniche.com to complete purchases, schedule consultations, and engage with the platform's full suite of offerings. His return is motivated by both necessity and the desire to participate in the digital marketplace on equal terms.

## CLASS ACTION ALLEGATIONS

54.    Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services, during the relevant statutory period.

55.    Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a New York City Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York and State of New York who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services offered during the relevant statutory period.

56.    Common questions of law and fact exist amongst the Class, including:

    a.    Whether Defendant's Website is a "public accommodation" under the ADA;

    b.    Whether Defendant's Website is a "place or provider of public accommodation" under the NYCHRL;

    c.    Whether Defendant's Website denies the full and equal enjoyment of the

products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the ADA; and

d.      Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYCHRL, NYCRL, and the NYHRL

57.     Plaintiff's claims are typical of the Class. The Class, similar to the Plaintiff, are severely visually impaired or otherwise blind, and claim that Defendant has violated the ADA, NYSHRL, NYCRL or the NYHRL by failing to update or remove access barriers on the Website so that the website can be independently accessible to the Class.

58.     Plaintiff will fairly and adequately represent and protect the interests of the Class Members because Plaintiff has retained and is represented by counsel who is competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the Class Members. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

59.     Alternatively, Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class Members predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

60.     Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

61.     Moreover, judicial economy will be served maintaining this lawsuit as a class action

for numerosity purposes in that it is likely that the number of patrons who have attempted to utilize

the services of Defendant's online platform exceeds 50 or more sight-impaired individuals.

## FIRST CAUSE OF ACTION
### (Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)

62.    Plaintiff, CESAR LUCIEN, on behalf of himself and the Class Members, repeats

and  realleges every allegation of the preceding paragraphs as if fully set forth herein.

63.    Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

No individual shall be discriminated against on the basis of disability in the full and
equal enjoyment of the goods, services, facilities, privileges, advantages, or
accommodations of any place of public accommodation by any person who owns,
leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

64.    Defendant's  Website is a "public accommodation" within the definition of Title III

of the ADA, 42 U.S.C. § 12181(7). The Website is a service that is offered to the general public,

and as such, must be equally accessible to all potential consumers.

65.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to

deny individuals with disabilities the opportunity to participate in or benefit from the products,

services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. §

12182(b)(1)(A)(i).

66.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also

includes, *inter alia*:

[A] failure to make reasonable modifications in policies, practices, or procedures,
when such modifications are necessary to afford such goods, services, facilities,
privileges, advantages, or accommodations to individuals with disabilities, unless
the entity can demonstrate that making such modifications would fundamentally

alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

67.    The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

68.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

## SECOND CAUSE OF ACTION
### (Violations of the New York City Human Rights Law)
### ("NYCHRL")

69.    Plaintiff, CESAR LUCIEN, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

70.    N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee,

proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

71.    Defendant's Website is a "public accommodation" within the definition of N.Y.C. Admin. Code § 8-102(9).

72.    Defendant is subject to NYCHRL because it owns and operates the Website, www.furniche.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

73.    Defendant is in violation of N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

74.    Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

75.    Defendant's actions constitute willful intentional discrimination against the Sub-Class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and

18

§ 8-107(15)(a), in that Defendant has:

    a.    constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

    b.    constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

    c.    failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

76.    Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

77.    As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

78.    Defendant's actions were and are in violation of the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

79.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

80.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

81.    Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth

below.

### THIRD CAUSE OF ACTION
**(New York State Human Rights Law)**
**("NYSHRL")**

82.     Plaintiff, CESAR LUCIEN, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

83.     At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 et seq., covers the actions of the Defendant.

84.     Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

85.     Defendant, at all relevant times to this action, owns and operates a place of public accommodation, the subject Website, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

86.     Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

87.     Pursuant to Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any

of the accommodations, advantages, facilities or privileges thereof."

88.    Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

89.    Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the Website known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired, full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

90.    The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

91.    Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

92.    Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

93.    Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass causing irreparable harm.

94.    Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties and fines for each and every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violation of New York State Civil Rights)**
**("NYCRL")**

95.    Plaintiff, CESAR LUCIEN, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

96.    Plaintiff served notice thereof upon the New York State Attorney General, as

required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

97.     Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No persons, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

98.     No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

99.     § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions which prevents the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

100.    Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

101.    Defendant intentionally and willfully failed to remove the barriers on their Website discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

102.    Defendant has failed to take any steps to halt and correct its discriminatory conduct

23

and discriminate against the Plaintiff and the Subclass members.

103.    Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or Defendant shall reside." *Id...*

104.    Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination including civil penalties and fines pursuant to N.Y. Civil Law § 40 *et seq.*

## FIFTH CAUSE OF ACTION
### (Declaratory Relief)

105.    Plaintiff, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

106.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.* prohibiting discrimination against the blind.

107.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a.  A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b.  A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.  A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d.  An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e.  Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f.  Pre-judgment and post-judgment interest;

g.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.  Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York

August 25, 2025

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

_____

Michael A. James, Esq.
Jon L. Norinsberg, Esq.
*Attorneys for Plaintiff*
825 Third Ave. Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
Mjames@employeejustice.com
jon@norinsberglaw.com